FINK v CITY OF DETROIT

Docket No. 61654. Submitted November 19, 1982, at Detroit.—Decided
  March 9, 1983.

  Nate Fink brought an action in the Tax Tribunal against the City
  of Detroit, seeking to reduce the property tax assessment on his
  property and to recover taxes paid. The tribunal ordered a
  reduction in the assessment and a refund to the petitioner of
  the taxes paid based on the original, higher assessment. The
  city appeals, alleging that Fink had not followed the procedure
  established by a Detroit ordinance governing assessment dis-
  putes. That procedure requires a dispute to be brought before a
  board of assessors prior to an appeal to the board of review.
  The city argues that, because Fink failed to request an appear-
  ance before the board of assessors, the board of review properly
  refused to hear the dispute and the Tax Tribunal was without
  jurisdiction to hear the appeal. *Held:*

  1. The Detroit ordinance which provides that a dispute may
  first be brought before a board of assessors is mandatory. A
  subseqeunt hearing before the board of review is, by ordinance,
  an appeal. The Tax Tribunal erred in construing the board of
  assessors hearing to be voluntary, rather than mandatory.

  2. The procedure herein, where a hearing before the board of
  review is conditioned upon a prior appearance before a lesser
  agency, is permissible where it is established pursuant to a city
  charter.

  Reversed.

1. STATUTES — ORDINANCES — JUDICIAL CONSTRUCTION.
   The rules governing the judicial construction of statutes are
   applicable to municipal ordinances.

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal, Corporations, Counties, and Other
   Political Subdivisions § 398.
   73 Am Jur 2d, Statutes § 142 *et seq.*
[2] 73 Am Jur 2d, Statutes §§ 22, 24, 25.
[3, 4] 72 Am Jur 2d, State and Local Taxation § 800.

2. WORDS AND PHRASES — MAY — SHALL — JUDICIAL CONSTRUCTION.

> The word "may" generally denotes a discretionary provision while the word "shall" suggests that the provision is mandatory; however, where the context indicates otherwise, "may" can have the effect of "must" or "shall".

3. TAXATION — REVIEW OF ASSESSMENTS — PREREQUISITES TO REVIEW.

> The context in which the word "may" is used in the Detroit ordinance governing the initiation of a property tax assessment review indicates that the use of the word was not intended to create a voluntary proceeding before the board of assessors prior to a hearing before the board of review; rather, a hearing before the board of assessors is a mandatory prerequisite to a hearing before the board of review (Detroit City Ordinances, § 21-7-2).

4. TAXATION — CITY CHARTERS — REVIEW OF ASSESSMENTS — ASSESSMENT HEARINGS.

> The General Property Tax Act does not apply to cities where their charters provide otherwise; cities are given the power to create procedures inconsistent with the general tax act, and no statute specifically forbids a city from making a hearing before a board of assessors a mandatory prerequisite to a hearing before the board of review (MCL 211.107; MSA 7.161).

*Honigman, Miller, Schwartz & Cohn* (by *Charles H. Tobias* and *Alan M. Hurvitz),* for petitioner.

*Sylvester Delaney,* Deputy Corporation Counsel, and *Robert F. Rhoades,* Assistant Corporation Counsel, for respondent.

Before: M. F. CAVANAGH, P.J., and R. B. BURNS and CYNAR, JJ.

R. B. BURNS, J. Petitioner, Nate Fink, brought this action against respondent, City of Detroit, in the Michigan Tax Tribunal (hereinafter the tribunal) to recover taxes and reduce the assessment on property in Detroit. Respondent appeals from the tribunal's opinion and order that reduced the as-

sessment on the subject property from $128,100 to
$94,400 and ordered a refund of the taxes paid.

The case was heard by the tribunal on stipu-
lated facts. The subject property had been assessed
at $128,100 in 1977. The assessment remained the
same for 1978. The assessment level was 50%,
with a resulting equalization factor of 1.0. The
1978 true cash value of the property was $188,800
with a state equalized valuation of $94,400.

The City Code of Detroit provides that assess-
ment disputes may be brought before a board of
assessors between February 1 and February 15 of
the year of assessment. An appeal to the board of
review is provided. The petitioner failed to request
an appearance before the board of assessors re-
garding the 1978 assessment, although disputes
over the 1979 and 1980 assessments on the subject
property were protested to the board of assessors
and board of review. A consent judgment was
entered in the tribunal on those disputes and are
not included within the present appeal.

Petitioner had not contacted his attorney until
after the board of assessor's review period had
expired in 1978. While appearing before the board
on an unrelated matter, petitioner's attorney at-
tempted to raise the dispute over the subject prop-
erty's assessment. Finding that petitioner had
failed to raise the issue before the board of asses-
sors, the board of review refused to hear the
appeal.

Before the tribunal, the parties stipulated to a
true cash value of $188,800 and an assessment of
$94,400 if the tribunal determined that it had
jurisdiction.

The tribunal found that respondent had created
a voluntary proceeding before the board of asses-
sors. The tribunal determined that petitioner's

letter to the board of review, sent after the board of assessors' review period, was a sufficient protest to the board of review to give the tribunal jurisdiction pursuant to MCL 205.735; MSA 7.650(35). The tribunal declined to reach the question of whether a municipality could require a mandatory proceeding before a board of assessors as a prerequisite to a proceeding before the board of review. Judgment was entered in accordance with the stipulated values.

Respondent first claims that an appeal before the board of assessors is a mandatory step to an appeal to the board of review. The board of review, respondent claims, by ordinance considers only matters raised at a hearing with the board of assessors.

Detroit City Code § 21-7-2 provides:

"Any person considering himself aggrieved by reason of any assessment may make complaint on or before February 15th, by him in writing, specifying at the time the grounds of such complaint before the board of assessors; and on sufficient cause being shown by the affidavit of such complainant, by oral proof, or by other evidence requested from him to the satisfaction of such board, it shall review the assessment complained of and may alter or correct the same to the person charged thereby, the property described therein and the estimated value thereof.

"The concurrence of a majority of the board shall be sufficient to decide the question of altering or correcting any assessment complained of. The board shall forthwith notify all persons complaining of the action of the board with reference to the assessment complained of. The period of the review by the board of assessors shall be February 1st to February 15th, inclusive, each year. The period for revision and correction of the rolls by the board of assessors shall begin February 16th and shall conclude on the first Monday in March each year.

"The board of assessors, having completed the review,

revision and correction of such assessment rolls, shall sign and, on the first Tuesday next following the first Monday in March each year, return the same to the common council. The completion and signing of the auxiliary book of the board of assessors' office shall be deemed a completion of the rolls, and the receipt by the council of a communication from the board of assessors announcing the completion of the rolls shall be deemed a delivery of such rolls to the council."

Detroit City Code § 21-7-4 provides:

"The common council, after receiving such assessment rolls, shall, at 10:00 A.M. on the Tuesday next following the first Monday in March 1972, and the same each year thereafter, proceed to consider the same. Any person who has previously complained to the board of assessors as provided in section 21-7-2 considering himself aggrieved by the assessment of his property and the decision of the board of assessors with respect to the grounds specified by the complainant thereon, may appeal to the common council in person or by his legal representative. Such appeal shall be in writing and shall state, specifically, the grounds previously presented to the board of assessors and the matter complained of together with the address of the complainant. No other matter in connection therewith shall be considered by the council.

"Such appeal shall be filed on or before the second Monday in March and may not be filed thereafter. The common council may refer such assessment rolls and appeals to a committee of the council for consideration. The committee shall give notice to any person who has filed an appeal, as above provided, of the time and place of the meeting for the hearing thereof, which notice may be made in writing, by delivering the same to such person or leaving the same at his place of residence or place of business with some person of proper age and discretion, or by mail to the address of such complainant. While acting upon such assessment rolls or appeals, any member or employee of the board of assessors may, and on request of the council or such commit-

tee by resolution, shall meet with the council or such committee and make such explanations as he may deem requisite in any case."

The rules governing the construction of statutes are applicable to ordinances. See *Adrian Mobile Home Park v City of Adrian,* 94 Mich App 194; 288 NW2d 402 (1979); *King v Director, Midland County Dep't of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977).

Petitioner argues, and the tribunal concluded, that § 21-7-2 created only a voluntary procedure before the board of assessors because of the use of the word "may".

The word "may" generally denotes a discretionary provision while the use of the word "shall" suggests that the provision is mandatory. *King, supra; Burns v Auto-Owners Ins Co,* 88 Mich App 663; 279 NW2d 43 (1979). However, when the context indicates otherwise, "may" can have the effect of "must" or "shall". *Burns, supra.* In the present case, the context of the use of the word "may" shows that the use was not intended to create a voluntary proceeding before the board of assessors. Section 21-7-2 provides the mechanics to initiate proceedings before the board of assessors. The party who "may" make complaints must do so in writing on or before February 15 of the year. The board of assessors is then directed to review the assessment.

Section 21-7-4 provides that "any person who has previously complained to the board of assessors as provided in section 21-7-2 * * * may *appeal* to the common council * * *". (Emphasis added.) The use of the word "appeal" suggests that one must first appear before the board of assessors so that there is a decision to appeal.

Section 21-7-4 continues, providing that "[s]uch appeal shall be in writing and shall state, specifically, the grounds previously presented to the board of assessors * * *". Again, this provision presumes that the party has appeared before the board of assessors.

Finally, § 21-7-4 provides that only matters previously presented to the board of assessors will be considered by the common council sitting as a board of review. Without a prior proceeding before the board of assessors, there would be nothing for the council to consider.

There simply is no procedure established by respondent for original proceedings before the common council sitting as a board of review. Instead, § 21-7-3.1 provides:

"The city council shall sit as a board of review to hear and determine appeals from property tax assessments. The board shall possess the duties and powers provided by law, which may be exercised by the whole board or by committees thereof.

"Appeals from decisions of the board shall be taken in the manner provided by law."

All of the above ordinances indicate that a hearing before the board of assessors is a prerequisite to a hearing before the common council sitting as a board of review. While there is no ordinance prohibiting a party from skipping the board of assessors and initiating original proceedings in the board of review, the statutory maxim *expressio unius est exclusio alterius* would appear applicable. See *Taylor v Michigan Public Utilities Comm*, 217 Mich 400; 186 NW 485 (1922). Respondent has, by ordinance, established only one procedure to review assessments, a procedure that requires a hearing before the board of assessors. The obvious

inference that can be drawn is that there are no original proceedings before the board of review. The Tax Tribunal erred in construing the applicable ordinances to the contrary.

While the tribunal erroneously decided the question of mandatory procedures before the board of assessors, it chose not to consider the question of whether a municipality can condition a hearing before the board of review on the petitioner's first seeking review before a lesser agency. Because the issue is one purely of law and will undoubtedly arise again, we will now decide the question rather than remand it to the tribunal.

The home rule cities act, MCL 117.3(a); MSA 5.2073(a), provides that each city charter must contain a provision for the election or appointment of a board of assessors and a board of review. MCL 117.3(i); MSA 5.2073(i) provides:

"(i) For the levy, collection, and return of state, county, and school taxes in conformity with the general laws of the state, except that the preparation of the assessment roll, the meeting of the board of review, and the confirmation of the assessment roll may be at such times as shall be provided in the city charter."

The former Detroit Charter, Title VI, ch II, § 4, in part provided:

"Notice that the assessment rolls will be completed on the first day of March in each year shall be given as herein provided. Any person considering himself aggrieved by reason of any assessment, may make complaint on or before April fifth, either orally or in writing, before the board of assessors, and on sufficient cause being shown by the affidavit of such person, by oral proof, or by other evidence, to the satisfaction of such board, it shall review the assessment complained of, and may alter or correct the same as to the person

charged thereby, the property described therein, and the estimated value thereof. The concurrence of the majority of the board shall be sufficient to decide the question of altering or correcting any assessment complained of."

Further, Title VI, ch II, § 5, in part provided:

"The common council, after receiving said assessment rolls, shall at 10 o'clock a.m. of the first succeeding day, proceed to consider the same, and any person who has previously complained to the board of assessors as herein provided in section four, considering himself aggrieved by the assessment of his property, and the decision of the board of assessors thereon, may appeal to the council; such appeal shall be in writing and shall state, specifically, the grounds thereof and the matter complained of; together with the address of the complainant, and no other matter in connection therewith shall be considered by the council. Such appeal shall be filed on or before April twentieth." (Ordinance 21-7-1 sets back the day of notice of assessment [tax day] to December 31 of the prior year.)

The issue, then, is whether the procedure established by the above charter provisions, and the ordinances established under them, are in "conformity with the general laws of this state", as required by MCL 117.3(i); MSA 5.2073(i).

The General Property Tax Act, MCL 211.1 *et seq.;* MSA 7.1 *et seq.,* provides at MCL 211.28; MSA 7.28 for the selection and qualifications of board of review members. MCL 211.29; MSA 7.29 provides that the board of review shall meet on the Tuesday next following the first Monday in March. However, as of the time of the present action, § 107 of the General Property Tax Act, MCL 211.107; MSA 7.161, in part, provided:

"Sec. 107. This act shall be applicable to all cities and

villages where not inconsistent with their respective charters."

It is difficult to see how the Detroit charter provisions can be inconsistent with an act which provides that charter provisions override the provisions of the act. Nonetheless, petitioner argues that a procedure which could preclude a party from appearing before the board of review is inconsistent with the Tax Tribunal Act, which requires only a protest before the board of review to give the Tax Tribunal jurisdiction. MCL 205.735; MSA 7.650(35).

Petitioner argues that the Supreme Court's decision in *Common Council of the Village of Three Rivers v Smith,* 99 Mich 507; 58 NW 481 (1894), forbids the creation of jurisdictional prerequisites to boards of review hearings. In *Smith,* the Village of Three Rivers created an assessor's review before the common council. The petitioner also was given notice that the assessor would be willing to meet with taxpayers on a certain date to discuss their assessments. The Court held that the meeting before the assessor alone was insufficient to comply with the statutory right to review, and although the village had provided for a board meeting, the petitioner was not told about it.

The *Smith* decision does not stand for the proposition that an assessor's review cannot be made mandatory if proper notice is given. Other cases cited by petitioner to support the proposition that municipalities cannot change the statutory procedures regarding a board of review all involve townships, and are therefore inopposite. Again, MCL 211.107; MSA 7.161 provides that the General Property Tax Act does not apply to cities when their charters provide otherwise. In contrast,

the General Property Tax Act always applies to townships.

In *Northwood Apartments v Royal Oak,* 98 Mich App 721; 296 NW2d 639 (1980), this Court considered a city's procedural prerequisites to a board of review hearing. There, the city scheduled appointments. Through a series of mishaps, the petitioner appeared before the board without an appointment and was denied a hearing. This Court held that the failure to properly schedule an appearance precluded a protest before the board of review and the tribunal properly declined jurisdiction.

Petitioner is correct in arguing that a municipality could not simply abrogate its board of review and insulate all its assessment decisions from tribunal review. See MCL 117.3(a); MSA 5.2073(a). However, cities are given the power to create procedures inconsistent with the general tax act. There is no statute which specifically forbids the creation of a hearing as a prerequisite to a hearing before the board of review. A city, under *Northwood,* has the power to create such procedures that are not unreasonably burdensome to the taxpayer's right to appear before the board of review.

In the present case, the parties stipulated that respondent processes an average of 12,000 assessment appeals per year. In light of such numbers, respondent's procedure of making an extra appellate level is reasonable. Considering that each petitioner is given the opportunity of review by the board of review, it appears that the procedure sacrifices little uniformity of decision while saving the board of review much work. At the time of the present action, the board of review was the common council. As the procedure seems rational and reasonable from the respondent's perspective, the only question left is whether the procedure is

unduly burdensome to taxpayers. MCL 211.29; MSA 7.29 provides that the board of review shall meet beginning on the first Tuesday following the first Monday in March. The board must also meet on the second Monday in March. Respondent's procedures call for the petitioner to make his protest approximately three weeks earlier, on February 15, before the board of assessors. The board of review then hears appeals filed on or before the Tuesday following the first Monday in March.

We conclude that the procedure established by respondent does not unreasonably restrict access to the board of review. The procedure only requires a protest three weeks before the date specified by statute in the absence of a charter provision. A city may, by charter, provide for the time its board of review shall meet. MCL 117.3(i); MSA 5.2073(i).

As respondent could have scheduled its board of review hearings three weeks earlier than the statute normally provides, it can schedule its board of assessors review at that time. The 15 days allowed for the taxpayer to decide whether to protest the assessment before the board of assessors is not an unreasonable time limitation. We conclude that a city, consistent with applicable statutes, may condition an appearance before its board of review on a prior appearance before another administrative agency.

Reversed. No costs, a public question.