BOOKER v CITY OF DETROIT

Docket No. 219554. Submitted March 11, 2002, at Detroit. Decided May 3, 2002, at 9:00 A.M. Leave to appeal sought.

Sanders S. Magee brought an action in the Wayne Circuit Court against the city of Detroit, seeking to quiet title to real property located in the city and damages for an unlawful taking. The city had obtained a default foreclosure judgment regarding the property on May 10, 1985, with regard to delinquent property taxes. The city obtained title to the property on July 10, 1985, when the redemption period expired, subject only to any outstanding state or county tax liens. Magee mistakenly tendered and the city accepted a payment for the delinquent taxes on September 30, 1985. Meanwhile, in May 1985, a tax lien held by Wayne County against the property was placed up for bid at the annual county tax sale. The tax lien was acquired by the state when no bid was received. On October 10, 1985, Magee redeemed the state tax lien by paying Wayne County the delinquent county taxes. The state issued Magee a quit-claim deed, releasing any and all interest the state had acquired. The payment of the delinquent county taxes extinguished the state tax lien and vested absolute title in the city because the city had already obtained a default foreclosure judgment and the redemption period applicable thereto had expired. The court, Edward M. Thomas, J., granted summary disposition in favor of the city on the basis of Magee's failure to redeem the property by paying the delinquent city taxes within the redemption period applicable to the city's default foreclosure judgment. Magee appealed. The Court of Appeals reversed and remanded. The Court found that a city's sale of tax-forfeitable property must be carried out by means that conform as nearly as possible to the provisions of the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, and that the city's charter provisions that are in direct conflict with the GPTA cannot be enforced. The matter was remanded for further findings regarding whether the city's charter provisions complied with the GPTA. *Magee v Detroit*, 203 Mich App 228 (1994). On remand, the court found that the city had acted contrary to state law in acquiring title to the property and entered a judgment in favor of the plaintiff on the claims of promissory estoppel and unjust enrichment. While the case was pending on remand, Sanders Magee died and the circuit

court substituted Mae A. Booker, the personal representative of the decedent's estate, as the plaintiff. The defendant city appealed.

The Court of Appeals *held*:

1. The court erred in entering a judgment for the plaintiff on her claim of promissory estoppel. The alleged statements of city employee Virginia Belser were insufficient to constitute a definite and clear promise. The plaintiff failed to prove that Magee reasonably relied on Belser's alleged statements when Magee paid the delinquent city taxes after the expiration of the redemption period. Belser's representations were unauthorized and could not bind the city under the promissory estoppel doctrine.

2. The court erred in entering a judgment for the plaintiff on her claim of unjust enrichment. The plaintiff may not recover damages on the theory of unjust enrichment because Magee voluntarily, albeit mistakenly, paid the delinquent city taxes. A taxpayer cannot recover a voluntary payment of taxes, even if it turns out that the payment was in excess of the amount owed or if the taxes were void.

3. Subsection 107(1) of the GPTA, MCL 211.107(1), provides that the provisions of the GPTA do not apply to a city that has adopted charter or ordinance provisions inconsistent with the GPTA. The *Magee* Court did not consider subsection 107(1) and wrongly held that no provision of a city charter may conflict with or contravene the provisions of any general law of the state. The law of the case doctrine does not require this panel to follow the *Magee* holding because the facts did not remain substantially or materially the same after the trial court conducted proceedings on remand. However, this panel is bound to follow *Magee* under MCR 7.215(I)(1). This panel need not request a conflict panel under MCR 7.215(I) because the issue is not outcome determinative.

4. The award of damages in favor of the plaintiff must be vacated.

Reversed.

TAXATION — UNJUST ENRICHMENT — MISTAKENLY PAID TAXES — RECOVERY.

A taxpayer cannot recover a voluntary payment of taxes, even if the payment was in excess of the amount owed or if the taxes were void; a taxpayer who voluntarily but mistakenly pays a tax may not recover damages on the theory of unjust enrichment.

City of Detroit Law Department (by *Linda D. Fegins*, Principal Assistant Corporation Counsel), for the city of Detroit.

Before: SAAD, P.J., and BANDSTRA and SMOLENSKI, JJ.

SMOLENSKI, J. Defendant appeals as of right from the circuit court's final order entering judgment in favor of plaintiff after a bench trial. The circuit court awarded plaintiff damages of $30,977.12 in this real property case on the basis of plaintiff's claims of promissory estoppel and unjust enrichment. Because we conclude that the circuit court erred as a matter of law in entering judgment in favor of plaintiff on those claims, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The decedent, Sanders S. Magee, acquired the subject real property in 1979. Although he collected rental income from the property, the decedent failed to pay over the course of several years either city of Detroit or Wayne County real property taxes owing on the property. On March 20, 1984, the city filed a foreclosure action in the Wayne Circuit Court regarding the delinquent real property taxes the city had assessed against the property for 1979, 1980, and 1981. Although the city personally served the decedent with the summons and complaint, he failed to appear and defend the suit. Accordingly, the city obtained a default foreclosure judgment on May 10, 1985. That judgment provided that absolute title to the real property would vest in the city unless the decedent paid the delinquent city taxes, along with interest and penalties, within sixty days from the date of the judgment.[1] When the sixty-day redemption

---

[1] However, the judgment provided that it

shall not affect any state or county taxes or assessments that have been bid to the State of Michigan or remain unpaid in the office of

period expired on July 10, 1985, the decedent had not come forward to pay the amount of the judgment. Therefore, the city obtained title to the property on July 10, 1985, subject only to any outstanding state or county tax liens. On September 30, 1985, the decedent tendered and the city accepted a payment of the delinquent city taxes. (Matters regarding this payment will be discussed in §§ II and III and in note 10 of this opinion.)

Simultaneously, Wayne County was also proceeding against the decedent for his failure to pay real property taxes assessed by the county. On the first Tuesday of May 1985, the county tax lien against the property was placed up for bid at the annual county tax sale. Because no individual bids were received, the tax lien was acquired by the state of Michigan. MCL 211.70. At that time, taxpayers enjoyed a lengthy redemption period during which they could pay delinquent county taxes, along with certain penalties and fees, and thereby redeem the tax lien acquired by the state.[2] On October 10, 1985, the decedent redeemed the state tax lien by paying the delinquent county taxes at the Wayne County Treasurer's Office. Because he redeemed the lien within the one-year period provided in MCL 211.74, the state issued a

---

the Auditor General of the State of Michigan or Wayne County Treasurer whether the lien for such taxes or assessments became a lien prior to or subsequent to the tax and assessment lien hereby foreclosed . . . .

Therefore, the title acquired by the city through the default foreclosure judgment was subject to only (1) the decedent's right to redeem within sixty days and (2) any outstanding state or county tax liens.

[2] MCL 211.74 provided for an initial one-year redemption period, and MCL 211.131c extended that redemption period by another six months. Both MCL 211.74 and MCL 211.131c are repealed effective December 31, 2006, under the provisions of 1999 PA 123, enacting § 5.

quitclaim deed to the decedent, releasing any and all interest the state had acquired in the property.

The decedent later argued that he obtained fee simple absolute title to the property by way of the state quitclaim deed. However, that was clearly not the case. MCL 211.131c governs the procedure by which a taxpayer can redeem a state tax lien. That statute provides, in pertinent part:

> A redemption deed issued under this section does not vest in the grantee named in the deed any title or interest in the property beyond that which he or she would have owned, if title to the property had not vested in this state .... The deed, except if there is redemption as owner by judgment for foreclosure by a municipality collecting its own delinquent taxes and assessments for tax and assessment liens of the municipality as provided in subsection (3), *revives all titles, liens, and encumbrances, with their respective priorities, as would have existed if title to the property had not vested in this state ....* [MCL 211.131c(4) (emphasis added).]

Thus, the quitclaim deed conveyed by the state to the decedent merely released the state tax lien and returned all parties with legal interest in the real property to the positions they would have been in had the state never acquired a tax lien. Because the city of Detroit had already obtained its default foreclosure judgment for delinquent city taxes, and because the redemption period on the city foreclosure had already expired, the decedent's payment of his delinquent Wayne County taxes extinguished the state tax lien and vested absolute title to the property in the city. MCL 211.131c(4).

In 1989, the decedent collaterally attacked the city's default foreclosure judgment by filing a civil suit alleging claims to quiet title and for inverse condem-

nation. The circuit court granted the city's motion for summary disposition on the ground that the decedent had failed to redeem the property by paying his delinquent city taxes within the sixty-day period following entry of the default foreclosure judgment. On appeal, this Court reversed and remanded for further proceedings. *Magee v Detroit*, 203 Mich App 228, 233-234; 511 NW2d 717 (1994). In that opinion, the *Magee* Court concluded that "a city's sale of tax-forfeitable property [must] be carried out by means that conform as nearly as possible to the provisions set forth" in the General Property Tax Act (GPTA), MCL 211.1 *et seq. Magee, supra* at 233. Further, the *Magee* Court concluded that Detroit charter provisions regarding the collection and foreclosure of delinquent real property taxes could not be enforced if those provisions were in "direct conflict" with the provisions of the GPTA. *Id.* On the basis of that premise, the *Magee* Court concluded that the circuit court had prematurely granted the city's motion for summary disposition, and remanded for further proceedings to determine whether the Detroit charter provisions adequately complied with the provisions of the GPTA.

On remand, the circuit court conducted an extensive evidentiary hearing and concluded that the Detroit charter provisions were inconsistent with the provisions of the GPTA. Specifically, the circuit court concluded that the city did not utilize a "petition for sale" and did not pursue a "judicial sale" procedure when attempting to regain title to tax forfeitable properties. Therefore, under this Court's holding in *Magee, supra,* the circuit court held that the city had acted contrary to state law when it acquired title to

the real property. Accordingly, the court permitted plaintiff's claims to proceed to a bench trial.[3]

The circuit court permitted plaintiff to amend her complaint several times, and the case finally reached trial on claims of inverse condemnation, unjust enrichment, promissory estoppel, and violation of 42 USC 1983, among other claims.[4] After a lengthy bench trial, the circuit court found in plaintiff's favor on only two claims: promissory estoppel and unjust enrichment. The circuit court awarded plaintiff $27,800 in damages on the claim of promissory estoppel and $3,177.12 in damages on the claim of unjust enrichment, for a total judgment of $30,977.12. Defendant appeals as of right from entry of that judgment.

## II. PROMISSORY ESTOPPEL

First, we address defendant's contention that the circuit court erroneously entered judgment for plaintiff on her claim of promissory estoppel. Defendant argues that plaintiff's proofs were insufficient to support a finding of liability on a theory of promissory estoppel because (1) the alleged statements of city employee Virginia Belser were insufficient to constitute a definite and clear promise, (2) the decedent did not reasonably rely on Belser's alleged statements, and (3) Belser's unauthorized statements could not bind the city. We agree.

---

[3] While the case was pending on remand, Sanders Magee died and the circuit court substituted the personal representative of the decedent's estate, Mae A. Booker, as plaintiff.

[4] Plaintiff originally based her § 1983 claim on the theory that the city had wrongfully deprived the decedent of his interest in the subject property, in violation of the city's own procedures. After the close of proofs, the circuit court allowed plaintiff to amend her complaint to allege a separate § 1983 claim for arbitrary and capricious government action.

In *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 442; 505 NW2d 275 (1993), this Court set forth the elements of a claim of promissory estoppel:

> "(1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." [Quoting *Schipani v Ford Motor Co*, 102 Mich App 606, 612-613; 302 NW2d 307 (1981).]

In determining whether the requisite promise existed, this Court must objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions. *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999). "The sine qua non of promissory estoppel is a promise that is definite and clear." *Marrero, supra* at 442. Further, a "promise is a manifestation of intention to act or refrain from acting in a specified manner, made in a way that would justify a promisee in understanding that a commitment had been made." *Schmidt v Bretzlaff*, 208 Mich App 376, 379; 528 NW2d 760 (1995). The doctrine of promissory estoppel must be cautiously applied, and only "where the facts are unquestionable and the wrong to be prevented undoubted." *Novak, supra* at 687; *Marrero, supra* at 443.

At trial, Phillip Magee, the decedent's son, testified that he accompanied the decedent on a visit to the city of Detroit offices in July or August 1985, and that he witnessed a conversation between the decedent

and Belser, a sales representative in the city's Community & Economic Development Department. According to Magee, Belser told the decedent that if he paid his delinquent real property taxes, "he wouldn't have any problem with the City." Magee also testified that Belser stated: "Pay your taxes. City loves money. Pay your taxes." Finally, Magee testified that Belser told the decedent that if he paid his delinquent taxes, he "wouldn't have to worry about [his] property being taken" by the city.[5] Plaintiff based her claim of promissory estoppel on Belser's alleged statements.

We agree with defendant's argument that Belser's alleged statements do not rise to the level of a definite and clear promise for purposes of the promissory estoppel doctrine. The evidence presented at trial demonstrated that defendant obtained a Wayne Circuit Court default foreclosure judgment regarding the subject property on May 10, 1985. Pursuant to Detroit City Charter, § 8-403, the decedent had sixty days after entry of the default judgment to redeem the property through payment of the delinquent city taxes. The evidence revealed that the decedent did not attempt to pay those delinquent taxes until September 30, 1985, over two months *after* the city redemption period expired. Examining Belser's alleged statements in context, we do not believe that they constitute a clear and definite promise that the city would not enforce its default foreclosure judgment. Plaintiff failed to present evidence that either Phillip Magee or the decedent ever informed Belser

---

[5] Although Belser was called to testify at trial, she invoked her rights under the Fifth Amendment and refused to either confirm or deny Magee's testimony regarding her alleged representations.

that the city had already obtained a foreclosure judgment or that the redemption period had already expired. Further, plaintiff failed to present any evidence that Belser reviewed documentation regarding the real property, which might have allowed her to gain that knowledge independently. Therefore, Belser's statements cannot reasonably be interpreted as a promise that the decedent could retain his interest in the property, despite entry of the city's foreclosure judgment and the expiration of the sixty-day redemption period.

Even if Belser's alleged statements qualified as a clear and definite promise under the promissory estoppel doctrine, we would conclude that plaintiff did not prove that the decedent reasonably relied on those statements when he paid the delinquent city taxes. Plaintiff claimed that the decedent acted in reliance on Belser's statements when he obtained a loan from his church and used a portion of those loan funds to pay the delinquent city taxes. However, Phillip Magee testified that Belser made the alleged promises in July or August 1985. The decedent did not attempt to pay the delinquent taxes until September 30, 1985. We conclude that it was not reasonable, given the facts of this case, for the decedent to believe that Belser's alleged statements remained accurate on that date. The decedent obviously knew how to obtain a copy of his city tax bill and how to use that bill to verify his status as legal owner of the real property. This is the procedure the decedent followed in April or May 1985, when he wanted to convince his tenant that he still owned the real property. However, Phillip Magee testified that neither he nor the decedent obtained a new copy of the city tax bill

in late September 1985, when they visited city offices to pay the delinquent city taxes. Rather, Magee testified that the decedent utilized the April 1985 tax statement in order to make the September 1985 payment.

It is undisputed that the decedent was on notice of the foreclosure action in the Wayne Circuit Court, because he received personal service of the summons and complaint in May 1984. Further, one year after commencement of the foreclosure action, in May 1985, the decedent was on notice that his ownership interest in the property was in question, given his tenant's refusal to pay rent. Therefore, even if Belser's alleged statements had been accurate in July or August 1985, and even if those statements did constitute a clear and definite promise, we conclude that it was unreasonable for the decedent to pay the delinquent taxes on September 30, 1985, without at least obtaining a current copy of the tax bill to verify his continued ownership interest in the real property.

Defendant next contends that Belser's alleged statements could not bind the city because those statements were outside Belser's authority as a city employee. To support its argument, defendant relies on *Johnson v Menominee*, 173 Mich App 690, 693-694; 434 NW2d 211 (1988), where this Court held:

> It is fundamental that those dealing with public officials must take notice of the powers of the officials. Persons dealing with a municipal corporation through one of its officers must at their peril take notice of the authority of the particular officer to bind the corporation. If the officer's act is beyond the limits of his or her authority, the municipality is not bound. [Citations omitted.]

According to the testimony of Belser's former supervisor, Belser lacked authority to approve a taxpayer's payment of delinquent city taxes after the redemption period had expired on a real property foreclosure judgment. Furthermore, according to the testimony offered by the operational manager of the City of Detroit Treasurer's Department, the city cashiers lacked authority to accept payment of delinquent real property taxes after the redemption period had expired on a foreclosure judgment. Plaintiff failed to present proof that Belser was authorized to make the alleged representations that the city would accept the decedent's payment of delinquent city taxes after expiration of the redemption period on the foreclosure judgment. Under *Johnson,* we conclude that Belser's unauthorized representations could not bind the city under the promissory estoppel doctrine.

For all the above reasons, we conclude that the circuit court erroneously entered judgment in favor of plaintiff on her claim of promissory estoppel.

### III. UNJUST ENRICHMENT

Next, we address defendant's contention that the circuit court erroneously entered judgment for plaintiff on her claim of unjust enrichment. Defendant argues that plaintiff could not recover damages on the theory of unjust enrichment because the decedent voluntarily, albeit mistakenly, paid the delinquent city taxes. Defendant argues that a taxpayer cannot recover a voluntary payment of taxes, even if it turns out that the payment was in excess of the amount owed or if the taxes were void. *Hertzog v Detroit,* 378 Mich 1, 17; 142 NW2d 672 (1966); *Nat'l Bank of Detroit v Detroit,* 272 Mich 610; 262 NW 422 (1935);

*Bateson v Detroit,* 143 Mich 582, 583-584; 106 NW 1104 (1906). We agree. Although the city mistakenly accepted the decedent's untimely payment, the decedent was also partially at fault, because he failed to verify that he still held an ownership interest in the property before he tendered payment. "The rule that a tax voluntarily paid cannot be recovered back, and that the taxpayer cannot aver a mistake of fact which results from his own neglect to consult the record, is too well settled to require extended citation of authorities." *Id.* at 584. Therefore, we conclude that the circuit court erroneously entered judgment in favor of plaintiff on her claim of unjust enrichment.

### IV. GENERAL PROPERTY TAX ACT

Next, we address defendant's contention that home rule cities may adopt and implement real property tax collection and foreclosure procedures that are inconsistent with the provisions contained in the GPTA. In essence, defendant argues that this Court's opinion in *Magee, supra,* was wrongly decided. Given our conclusion that the circuit court erroneously entered judgment in favor of plaintiff on her claims of promissory estoppel and unjust enrichment, we need not address this issue in order to resolve the present case. Nevertheless, because we are concerned regarding the state of the law in this area, we briefly turn our attention to the proper relationship between the powers of home rule cities and the provisions of the GPTA.

In our view, the GPTA clearly states that its provisions do not apply to a city that has adopted inconsistent charter or ordinance provisions. The statute provides, in pertinent part:

> The requirements of this act relating to the amount and imposition of interest, penalties, collection or administration fees, the procedures for collection of taxes, *and the enforcement of tax liens* are applicable to all cities and villages *if not inconsistent with their respective charters or an ordinance enacted pursuant to their respective charters.* In addition to the methods authorized under section 108, a city or village, which by its charter does not return its delinquent taxes to the county for collection, may enforce the tax liens for delinquent taxes, assessments, and charges by foreclosure proceedings or any other method authorized under statute, charter, or ordinance enacted pursuant to law or charter. [MCL 211.107(1) (emphasis added).]

This statutory section plainly and unambiguously provides that if a conflict exists between the GPTA and the provisions of a city charter, the charter governs. After all, "[i]t is difficult to see how the Detroit charter provisions can be inconsistent with an act which provides that charter provisions override the provisions of the act." *Fink v Detroit*, 124 Mich App 44, 53; 333 NW2d 376 (1983).[6] Therefore, we agree with defendant's argument that home rule cities are free to adopt and implement real property tax collection and foreclosure procedures that are inconsistent with the provisions contained in the GPTA.

However, on the first appeal in this case, the *Magee* Court concluded that "a city's sale of tax-forfeitable property [must] be carried out by means that conform as nearly as possible to the provisions set forth in the

---

[6] In addition, several Michigan Supreme Court opinions have upheld Detroit charter provisions regarding the collection of its real estate taxes, despite the differences between those charter provisions and the GPTA. See *Detroit v Walker*, 445 Mich 682, 689-690; 520 NW2d 135 (1994); *Detroit v Collateral Liquidation, Inc*, 295 Mich 440, 441; 295 NW 218 (1940); *Detroit v Safety Investment Corp*, 288 Mich 511, 515-517; 285 NW 42 (1939).

GPTA." *Magee, supra* at 233. Further, the *Magee* Court concluded that the Detroit charter provisions regarding the collection and foreclosure of delinquent real property taxes could not be enforced if they were in "direct conflict" with the provisions of the GPTA, because "[n]o provision of a city charter may conflict with or contravene the provisions of any general law of the state." *Id.*, citing MCL 117.36, and *Joy Management Co v Detroit*, 176 Mich App 722, 733; 440 NW2d 654 (1989). Because the *Magee* decision did not consider the language of MCL 211.107, which states that the GPTA does not apply to a city that has adopted inconsistent city charter or city ordinance provisions, we conclude that it was wrongly decided.[7]

### V. LAW OF THE CASE DOCTRINE

Despite our disagreement with the holding in *Magee*, the law of the case doctrine would normally require us to follow that holding, because that opinion was issued in an earlier appeal in the same case. However, defendant persuasively argues that the law of the case doctrine does not require this Court to follow the erroneous *Magee* decision.[8]

---

[7] Furthermore, while the *Magee* holding relied on *Joy, supra* at 733, for the proposition that a city charter cannot conflict with a state statute, it ignored *Joy's* holding that "[t]he General Property Tax Act does not apply to cities whose charters provide inconsistent provisions. MCL 211.107." *Joy, supra* at 734.

[8] The *Magee* opinion did not address the adequacy of plaintiff's proofs on her claims of promissory estoppel and unjust enrichment. Given our conclusion that the circuit court erroneously entered judgment in favor of plaintiff on those two claims, we need not address the binding nature of the *Magee* opinion under the law of the case doctrine in order to resolve the present case. However, because analysis of that doctrine is relevant to our conclusion that *Magee* was wrongly decided, we address it here.

This Court explained the law of the case doctrine in *South Macomb Disposal Authority v American Ins Co*, 243 Mich App 647, 654-655; 625 NW2d 40 (2000):

> The law of the case doctrine dispenses with the need for this Court to again consider legal questions determined by our prior decision and necessary to it. As generally stated, the doctrine is that if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. Additionally, under the doctrine, if an appellate court decides a legal question, the lower court is also bound by that legal decision on remand. The rationale behind the doctrine is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing. [Internal quotations and citations omitted.]

The law of the case doctrine applies "without regard to the correctness of the prior determination." *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997). Therefore, a conclusion that a prior appellate decision was erroneous is not sufficient, by itself, to justify ignoring the law of the case doctrine. *Bennett v Bennett*, 197 Mich App 497, 500; 496 NW2d 353 (1992).

> To do so would vitiate that doctrine because it would allow this Court to ignore a prior decision in a case merely because one panel concluded that the earlier panel had wrongly decided the matter. It would, therefore, reopen every case to relitigation of every issue previously decided in hopes that a subsequent panel of the Court would decide the issue differently than did the prior panel. Clearly, the law-of-the-case doctrine has no usefulness if it is only applied when a panel of this Court agrees with the decision reached by a prior panel. [*Id.*]

Nevertheless, the law of the case doctrine is "discretionary and merely expresses the practice of courts generally; it is not a limit on their power." *Freeman v DEC Int'l, Inc*, 212 Mich App 34, 37; 536 NW2d 815 (1995). Furthermore, the law of the case doctrine applies only if the facts remain substantially or materially the same. *People v Phillips (After Second Remand)*, 227 Mich App 28, 31-32; 575 NW2d 784 (1997); *Driver, supra* at 565; *Bennett, supra* at 499. In the present case, we conclude that the law of the case doctrine does not require us to follow the *Magee* holding regarding the GPTA because the facts did not remain substantially or materially the same after the trial court conducted its remand proceedings.

When the *Magee* Court issued its decision, it did not have the benefit of examining the Detroit charter provisions at issue. See *Magee, supra* at 232, n 5. Therefore, the *Magee* Court did not clearly understand what provisions the Detroit Charter actually contained regarding the collection of delinquent real property taxes. This can be seen in the *Magee* Court's statement that, "unless a petition for the sale of the property to Mr. Sachs [the purchaser from the city] was filed before October 5, 1985 . . . any sale of the property should have been obviated under § 106 (*or similar section of the Detroit charter*)." *Id.* at 232 (emphasis added). On remand, it became clear that the Detroit charter had no provision similar to MCL 211.106 regarding a petition for sale and a judicial sale proceeding.

In addition, when the *Magee* Court issued its decision, it seems to have assumed that the state of Michigan obtained fee simple absolute title to the real property after the 1984 annual county tax sale and

that the state conveyed fee simple absolute title to the decedent in the March 1986 quitclaim deed. *Magee, supra* at 229-230. However, the testimony developed on remand demonstrated that this was not true. According to the city's taxation expert, the state did not obtain fee simple absolute title after the 1984 annual county tax sale, but acquired only a tax lien against the property, which could not have matured into fee simple absolute title until after the expiration of all redemption periods.[9] The testimony on remand clarified that the decedent redeemed the state tax lien before the expiration of the first one-year redemption period. Therefore, the state never acquired fee simple absolute title, and it could not have conveyed such title to the decedent.

Further, when the *Magee* Court issued its decision, it seems to have assumed that the city allowed Wayne County to collect real property taxes on its behalf. *Id.* at 230.[10] Testimony from both city and county officials, developed on remand, revealed that Wayne County is not authorized to accept payment of taxes on behalf of the city of Detroit. This confusion may have led the *Magee* Court to further conflate the distinction between the parallel city and county processes for the collection of delinquent real property taxes.

In sum, because the city developed a factual record on remand that was not available to the *Magee* Court,

---

[9] This conclusion is also supported by the language of MCL 211.131c(4).

[10] The opinion states that the decedent "paid the balance of his delinquent property taxes" on October 5, 1985. *Magee, supra* at 232. Proceedings on remand made clear that the decedent paid his delinquent *county* taxes in October 1985, redeeming the state tax lien. In contrast, the decedent paid the delinquent *city* taxes in September 1985.

and because key facts did not remain substantially or materially the same, we conclude that the law of the case doctrine does not require us to follow the first holding issued in this case.

Nevertheless, because *Magee* was a published opinion, we are bound to follow it under MCR 7.215(I)(1). We decline to request a conflict panel under MCR 7.215(I) because we conclude that the issue is not outcome determinative.

## VI. 42 USC 1983

Defendant next contends that plaintiff failed, as a matter of law, to prove a claim under 42 USC 1983. Our review of the record indicates that plaintiff asserted two separate claims under § 1983: (1) that the city engaged in arbitrary and capricious action and (2) that the city violated its own procedures when it obtained title to the subject real property. However, the circuit court ruled that plaintiff had failed to prove arbitrary and capricious action. Further, the circuit court dismissed plaintiff's claim for violation of city procedures, on the basis of a ruling that plaintiff abandoned that claim. Although plaintiff objected to these rulings below, plaintiff failed to properly file a timely appeal from the circuit court judgment. Because there was no adverse ruling against defendant regarding this issue, we decline to address it.

## VII. ATTORNEY FEES

Defendant next contends that plaintiff was not entitled to an award of attorney fees, under either federal or state law. However, our review of the lower court

record indicates that the circuit court denied plaintiff's motion for attorney fees and costs. Although plaintiff objected to this ruling below, she failed to properly file a timely appeal from the circuit court judgment. Because there was no adverse ruling against defendant regarding this issue, we decline to address it.

### VIII. CONCLUSION

We conclude that the circuit court erroneously entered judgment on behalf of plaintiff on her claims of promissory estoppel and unjust enrichment. Because these were the only two claims on which plaintiff prevailed, we must vacate the circuit court's award of damages in plaintiff's favor. In light of this ruling, we need not address defendant's arguments regarding the circuit court's denial of its motions for a new trial or remittitur.

Reversed.